IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON CORLEY, | No. CIV S-07-2180-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 19) and defendant's cross-motion for summary judgment (Doc. 20).

/ / /

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on January 13, 2005.[1] Plaintiff claims that disability began on January 13, 2005. She claims that disability is caused by a combination of degenerative disc disease of the lumbar spine, bilateral wrist problems, foot problems, shoulder problems, and gout. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 16, 2007, before Administrative Law Judge ("ALJ") Plauche F. Villere, Jr. In a February 22, 2007, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

   1. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, shoulder pain, wrist pain, and foot pain;

   2. The claimant does not have an impairment or combination of impairments set forth in the Listings of Impairments;

   3. The claimant has the residual functional capacity to perform light work; she can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently balance; she can occasionally stoop, kneel, crouch, and crawl; and

   4. Based on application of the Medical-Vocational Guidelines, plaintiff is not disabled given her residual functional capacity, education, and age.

After the Appeals Council declined review on August 14, 2007, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[1] Plaintiff filed two prior applications. Her first application was filed on June 25, 2001, and was denied in a decision issued on November 5, 2002. Plaintiff's second application was filed on November 7, 2002, and was denied in a decision issued on October 21, 2004.

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:

March 5, 2005 – Plaintiff submitted an "Exertional Daily Activities Questionnaire" form.  See CAR 85-87.  Plaintiff stated that she was receiving general assistance benefits and was homeless.  She stated that "pain rates in lower back is every day 8 to 10" and that she cannot stand or sit for long periods of time due to pain.  Specifically, plaintiff stated that she can only sit or stand for 30 minutes at a time before she experiences "pinching and pulling" pain in the lower back and both legs.  She stated she could walk about two blocks with a cane, which would take her 30 minutes.  She stated that she cannot climb stairs.  Plaintiff stated that she could only carry up to 10 pounds.

April 14, 2005 – Agency examining doctor Navdeep Dhaliwal, M.D., conducted an orthopedic examination and prepared a report.  See CAR 113-15.  Dr. Dhaliwal evaluated plaintiff for complaints of low back pain and shoulder pain.  The doctor reported that plaintiff was taking the following medications for pain:  Celebrex, Flexeril; Neurontin; Zantac; and Motrin. While the doctor noted that plaintiff presented at the examination with a limp, she did not have any difficulty getting on and off the examination table.  Dr. Dhaliwal observed "some inconsistencies on her examination" and that plaintiff "was somewhat exaggerating her symptoms."  He reported that she could walk without a cane.

On physical examination, Dr. Dhaliwal noted that plaintiff exaggerated her symptoms and was not cooperative.  Plaintiff's range of shoulder and spine motion was poor and she complained of pain on straight leg raising.  The doctor stated:  "Her effort was poor but on encouragement she had normal strength in upper and lower extremities."  He provided the following assessment:

> The claimant who presented today complains of low back pain.  On today's examination her symptoms are somewhat exaggerated.  Her cooperation was very poor.  She has loss of sensation in non-dermatomal

distribution on the right leg.  On encouragement she had full strength but her effort is poor.  I had difficulty assessing her fully because of her poor cooperation.

Dr. Dhaliwal stated that there are "no restrictions on any lifting, postural, manipulative, or environmental limitations, just based on the examination today."

April 25, 2005 – Agency consultative doctor George A. Jansen, M.D., submitted an assessment based on Dr. Dhaliwal's examination.  See CAR 118.  He stated:

> ALJ 10-21-04 provides RFC for light.  The current decision is not non-severe, based upon the absence of objective physical findings to support exertional restrictions, or functional, manipulative, and environmental restrictions.  Claimant's credibility is tainted by her performance at CE.  (emphasis in original).

May 2005 – The record contains treatment records from Sacramento Primary Care for various dates in May 2005.  See CAR 119-22.  These records are largely illegible.  While plaintiff discusses other Sacramento Primary Care records, she does not provide any summary of treatment notes from May 2005 in her "Summary of Relevant Medical Evidence."

June 15, 2005 – Dr. Jansen submitted a physical residual functional capacity assessment.  See CAR 123-32.  He concluded that plaintiff could:  occasionally lift 20 pounds and frequently lift 10 pounds; sit, walk, and stand for six hours in an eight-hour day; and push/pull without restriction.  He opined that plaintiff could occasionally climb ramps and stairs, but should never climb ropes, ladders, and scaffolds.  Dr. Jansen concluded that plaintiff's ability to balance was unlimited, but that she should only occasionally stoop, kneel, crouch, or crawl.  He did not find any manipulative, visual, communicative, or environmental limitations.  Dr. Jansen's ultimate conclusion was that the current ". . . RFC aligns [with] ALJ decision of 10-24-04."

June 2005 through December 2005 – The record contains additional treatment notes from Sacramento Primary care from June 2005 through the end of that year.  See CAR 153-55.  As with the records from May 2005, these records are largely illegible.  Plaintiff does not summarize any Sacramento Primary Care records from 2005.

<u>January 20, 2006</u> – Robert A. Penman, M.D., reported on an x-ray of plaintiff's chest and hips.  <u>See</u> CAR 151.  Dr. Penman reported normal x-rays with no signs of abnormality.

<u>April 14, 2006</u> – Fred Stargardter, M.D., reported on an x-ray of plaintiff's right foot.  <u>See</u> CAR 146.  Dr. Stargardter reported "[h]allux valgus deformity without any other significant abnormality."  He observed that the osseous structures and joints are intact and that the observed deformity was mild.

<u>June 19, 2006</u> – Treatment notes from Sacramento Primary Care reveal that plaintiff's pain medication (Tylenol) prescription was refilled.  <u>See</u> CAR 143.

<u>July 14, 2006</u> – A treatment note from Sacramento Primary Care is largely illegible, but plaintiff provides the following summary:

> Treatment notes dated July 14, 2006, reflected complaints of foot pain with a notation that Ms. Corley had an August 15, 2006, appointment with podiatry.  She also had bilateral wrist pain and it was noted that the wrist splints were helpful.  TR 142.

Plaintiff does not indicate any objective findings on physical examination.

<u>August 15, 2006</u> – Treatment notes from Sacramento Primary Care show that, on physical examination, plaintiff right foot was swollen "around the joint."  <u>See</u> CAR 141.  The note indicates an assessment of "possible gout."  Plaintiff was prescribed medication.

<u>November 7, 2006</u> – Treatment notes from Sacramento Primary Care reflect that plaintiff was seen for chronic neck and foot pain not resolving.  <u>See</u> CAR 138.  Plaintiff was prescribed Tylenol.

<u>January 8, 2007</u> – Plaintiff was treated at Sacramento Primary Care.  <u>See</u> CAR 137.  While the treatment note is largely illegible, plaintiff provides the following summary:

> Treatment notes dated January 8, 2007 reflected that Ms. Corley complained of hip pain, wrist pain, and back pain which radiated down her right leg.  The notes noted that Ms. Corley had a long history of sciatica and had gone through physical therapy and pool therapy.  The notes also reflected that Ms. Corley used a cane for ambulation.  On examination, Ms. Corley had positive Tinel's sign on both wrists, decreased grip strength on the left wrist, poor recovery on back flexion 18" from floor.  It

was also noted that she was unable to perform the heal/toe walk secondary to pain.  She was referred for an EMG.  TR 137.

<u>January 16, 2007</u> – Plaintiff testified at the administrative hearing.  <u>See</u> CAR 156-74.  Plaintiff was represented by counsel at the hearing.  The ALJ observed that plaintiff used a cane and wrist braces on both wrists.  Plaintiff testified that these were all prescribed by a doctor and that, within the previous month, she had been using the wrist braces almost all the time due to pain.  Before that, plaintiff used the wrist braces only at night.  She testified that she always used the cane.  Plaintiff stated that she sometimes needs assistance getting in and out of the shower, but that she had no other grooming or hygiene problems.  She also stated she could dress herself.  She stated that she can't vacuum, but can dust.  She also stated that she did not think she was capable of driving a car due to pain in her legs.  She stated that she has a herniated disc with sciatica at L4/5.  She also stated that she has gout flare-ups.  As to treatment, plaintiff testified that painkillers ease her pain, but that her pain is still an 8 out of 10.   Plaintiff stated that her treatment consists only of medication, assistive devices, and follow-up visits with her doctors.  At the end of the hearing, the ALJ held the proceedings open for three weeks for plaintiff to submit a residual functional capacity assessment from her treating doctors at Sacramento Primary Care.  Nothing, however, was ever submitted after the hearing.

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### IV.  DISCUSSION

In her motion for summary judgment, plaintiff argues:  (1) the ALJ erred in concluding that plaintiff had failed to rebut the presumption of continuing non-disability; (2) the ALJ failed to adequately develop the record; and (3) the ALJ failed to properly assess non-exertional limitations in reaching his residual functional capacity determination and, therefore, erred in relying on the Medical-Vocational Guidelines in lieu of vocational expert testimony.

**A.     Presumption of Continuing Non-Disability**

Plaintiff argues that the ALJ misapplied the rule of Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), and Acquiescence Ruling ("AR") 97-4(9) in concluding that plaintiff had not overcome presumption of continuing non-disability.  Specifically, she contends that, because her wrist problems, foot problems, and gout had not been considered in the prior administrative decisions, she successfully demonstrated "changed circumstances" sufficient to rebut the presumption.  As defendant notes, the presumption of continuing non-disability is an application of administrative res judicata.  In other words, a prior administrative determination as to residual

functional capacity, past relevant work, educational background, and/or vocational profile is binding unless the circumstances have changed.  See Chavez, 844 F.2d at 694.

In this case, the ALJ outlined the doctrine and stated:  "As discussed below, I find that the presumption of the claimant's 'continuing [non-]disability' has not been overcome."  The ALJ then went through the traditional five-step sequential analysis and concluded the evidence did not establish that plaintiff was disabled and, for this reason, found that plaintiff had not rebutted the presumption.  Thus, contrary to plaintiff's contention, the ALJ's disability determination in this case was not due to any misapplication of the continuing non-disability doctrine.  Rather, it was due to the ALJ's independent analysis of the record and application of the five-step sequential evaluation.  Whether the ALJ properly considered plaintiff's foot problem, wrist problem, and gout in determining plaintiff's current residual functional capacity is discussed below.

### B.    Duty to Develop the Record

Plaintiff argues that the ALJ failed to develop the record by:  (1) obtaining the records produced in connection with her prior administrative proceedings; (2) obtaining an updated residual functional capacity assessment; and (3) obtaining an updated consultative examination.  The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).  Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.  The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d

8

599, 602 (9th Cir. 1998)).

In this case, the record was neither ambiguous nor inadequate. As defendant observes, the issue before the ALJ was whether plaintiff's medical records subsequent to the prior decisions established a disabling impairment. Here, the record was sufficient for the ALJ to answer this question. In particular, the ALJ had access to plaintiff's treatment records from Sacramento Primary Care for the period after the second administrative decision in October 2004 through January 2007. While these records show that plaintiff was receiving treatment for complaints of foot problems, wrist problems, and possible gout, the records do not reveal any significant objective findings or actual diagnosis. The records demonstrate that plaintiff's complaints were treated with minimal medication. As to the January 2007 treatment note, which plaintiff states revealed objective findings consistent with disabling limitations, the note indicates that plaintiff was referred for further testing, including x-rays. However, no such testing data appears in the record.

Most significantly, the ALJ held the record open to allow plaintiff to submit a medical source statement from her treating doctors at Sacramento Primary Care as to plaintiff's residual functional capacity. This alone satisfied the duty to develop the record. See id. Plaintiff, however, never submitted such a statement.

Given the scant objective findings, lack of treatment consistent with disabling impairments, and plaintiff's failure to submit a medical source statement, the court agrees with defendant that plaintiff did not meet her burden of establishing the existence of a severe impairment causing disabling functional limitations. In other words, the record was sufficient for the ALJ to conclude that plaintiff's condition had not changed since the prior determination even though she alleged new impairments.

///

///

///

**C.      Residual Functional Capacity Assessment and Reliance on Grids**

Plaintiff contends that the ALJ failed to properly account for pain and manipulative limitations in concluding that plaintiff had the residual functional capacity for light work. Specifically, she contends the ALJ did not "properly evaluate and include the impact of Ms. Corley's wrist impairment, need to wear wrist braces, and pain." She also contends that the record establishes that "she experienced manipulative limitations, postural limitations, and pain as a result of her impairments." She states that "securing the prior files was especially important in Ms. Corley's case since the record before this court does not include a residual functional capacity assessment by either an examining or treating physician." Plaintiff concludes that, because the record establishes non-exertional limitations, the ALJ erred in relying on the Medical-Vocational Guidelines and should have obtained vocational expert testimony.

1.      Plaintiff's Limitations

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[2] In this case, plaintiff contends that the ALJ's finding that she has the residual functional capacity for light work does not properly

---

[2] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

account for various non-exertional imitations such as need to use wrist braces and pain.

Apparently based largely on plaintiff's subjective complaints, the ALJ gave plaintiff the benefit of the doubt and concluded that her wrist problems, foot problems, and low back problems constituted severe impairments. As discussed above, there is no objective evidence that any of these impairments resulted in disabling limitations. Contrary to plaintiff's assertion that the record does not contain a residual functional capacity assessment from an examining source completed after the prior determination in October 2004, the record contains Dr. Dhaliwal's April 2005 assessment. Specifically, Dr. Dhaliwal concluded that there are "no restrictions on any lifting, postural, manipulative, or environmental limitations, just based on the examination today." Dr. Jansen concurred and concluded that plaintiff had the residual functional capacity for light work. Despite the ALJ holding the record open, plaintiff never submitted a medical source statement from a treating physician offering a contrary opinion.

Given the lack of objective evidence, the only basis for plaintiff's contention that she has non-exertional limitations (such as evidenced by the use of wrist braces) is plaintiff's testimony. In finding that plaintiff could perform light work, the ALJ rejected her testimony as not credible, and plaintiff does not challenge that finding. Even if she did, the ALJ did not err in his credibility assessment. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d

1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

///

///

As to credibility, the ALJ stated:

After considering the evidence of record, the undersigned finds that the claimant's statements concerning the intensity, persistence, and limiting effect of [her impairments] are not entirely credible.

\* \* \*

At the hearing, the claimant testified that she was prescribed a cane and she uses it all the time even inside. She stated that she has wrist pain and she wears bilateral wrist brace[s]. She stated because of increased pain she now wears [the wrist braces] all day and at night. She stated that she goes shopping, does less cooking, can't do dishes, and light dusting. She visits friends once a month. She stated that she does not drive; her driver's license was suspended for DUI. She stated she probably won't drive again; she is so used to [rapid transit]. The claimant stated that she has a herniated disc with sciatica, pain in back and legs. She has carpal tunnel syndrome on right, and painful gout. She stated that she takes medication for her gout, her high blood pressure is controlled and she takes pain medication for her back pain. She stated that she can't stoop, squat, kneel, climb, reach, push, pull, crawl, or twist because of pain.

The claimant has alleged that she was unable to work due to back pain. She stated that standing and sitting too long causes pain. Although the records have demonstrated some abnormalities involving the cervical and lumbar spine, they objective findings do not demonstrate persistent abnormalities in motor functioning, or bony destruction or similar abnormalities that would meet or equal any of the pertinent muskuloskeletal or neurological disorders set forth in the listing.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.

While the claimant has had numerous physical complaints and sees her physician on a regular basis, the minimal clinical findings do not justify the claimant's contention that they keep her from working. While she has received treatment for the alleged muskuloskeletal pain, the treatments have been essentially routine and conservative in nature. The treatment she has received for all of her impairments have been office visits for routine complaints and check-ups. There are no emergency room treatments, no surgeries, or hospitalization. She has not received or been referred to for trigger point injections, acupuncture, or chiropractic treatment. Her doctor has treated her for various complaints of shoulder, back, and wrist pain. Findings have revealed positive Tinel's right wrist. Muscle strength was 5/5, [deep tendon reflexes] were normal, reflexes were within normal limits. There is no evidence of atrophy, weakness, deformity, muscle tenderness, or spasms, anatomically consistent sensation changes, or reflex changes. The claimant stated that the wrist

>   splints helped her.  An x-ray of the hip was normal.
>
>   * * *
>
>   The undersigned notes that the claimant's physician has not defined any exertional or other physical limitations resulting from these disorders.  The claimant has not required any surgery or other treatment to relieve pain.  There is no evidence that the claimant's doctor suggested other modalities of treatment.  Furthermore, the medical evidence failed to support the intensity of the claimant's symptoms, and aggravating factors.
>
>   The evidence consistently shows that the claimant's subjective complaints are much worse than the objective findings as evidenced by the record.  The undersigned has considered the claimant's testimony and finds it partially credible, but not as limited as alleged. . . .

The court finds that this analysis is proper and based on substantial evidence.  In particular, the ALJ appropriately noted plaintiff's routine course of treatment with medication and lack of other modalities to control her pain.  As to gout, the only mention of this disorder was an assessment of "possible gout" in August 2006.  As to wrist problems, plaintiff stated that the wrist braces help and there is no objective indication that plaintiff's wrist impairment requires the constant use of braces or that plaintiff is functionally limited due to wrist problems.  Further, plaintiff was uncooperative during the consultative examination by Dr. Dhaliwal, who concluded that plaintiff demonstrated symptom exaggeration.

Based on the foregoing, the court finds that the ALJ properly concluded that plaintiff did not have limitations which preclude light work.

2. <u>Application of the Grids</u>

The Commissioner may apply the Medical-Vocational Guidelines ("Grids") in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 998 (9th Cir. 1985); <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only.  <u>See</u> 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).  "If a claimant has an impairment that limits his or her

ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.[3]  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

Based on the opinions of Drs. Dhaliwal and Jansen, the ALJ concluded that plaintiff could perform light work subject to limitations in her ability to climb ramps, stairs, ladders, ropes, and scaffolds.  The ALJ also concluded that plaintiff was limited in her ability to stoop, kneel, crouch, and crawl.  The question is whether these limitations preclude application of the Grids.  As indicated above, the Grids may be used despite non-exertional imitations (for example, as here, limitations on postural activities such as stooping, climbing, etc.) if the non-exertional imitations do not impact the primary strength activities.  In this case, the ALJ concluded that plaintiff had the exertional capability to perform strength activities (i.e., sitting, standing, lifting, carrying, pushing, pulling) of light work.  Thus, use of the Grids was appropriate if the identified non-exertional limitations did not impact plaintiff's ability to perform light work.

In this regard, defendant states:

> . . . The nonexertional limitations the ALJ assessed – only occasionally climbing ramps or stairs and never climbing ladders, ropes or scaffolds; only occasionally stooping, kneeling, crouching or crawling; and only frequently balancing – were of a nature that did not significantly impact either the light or sedentary occupational bases (AR 15, 18-19).

---

[3] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

> See, SSR 83-14: Titles II and XVI: "Capability to Do Other Work – the Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments," available at 1983 WL 83254 (the full range of light work implies that the worker is able to do occasional bending of the stooping type). Accord, SSR 85-15: Titles II and XVI: "Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," available at 1985 WL 56857 (limitations on kneeling and crawling have almost no impact on the broad world of work; some limitation in climbing and balancing ordinarily would not have a significant impact on the broad world of work). . . . Therefore, the ALJ correctly found that [Medical-Vocational] Guideline Rule 202.13 directed that Plaintiff be found "not disabled" . . . , and his decision should be affirmed. Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) (where the claimant failed to establish a significant nonexertional limitation, the ALJ was free to rely on the Guidelines rather than a VE).

The court agrees. Here, there is no evidence that plaintiff's non-exertional limitations with respect to climbing, stooping, etc., more than minimally impacted her capacity for light work. In other words, despite any non-exertional limitations, plaintiff could still perform all the strength activities of light work. Therefore, the ALJ properly relied on the Grids and was not required to obtain testimony from a vocational expert.

## V. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 19) is denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: February 19, 2009

                                                            **CRAIG M. KELLISON**
                                                            UNITED STATES MAGISTRATE JUDGE